Attorney Neiman is here on behalf of the appellant and Attorney Brooks is here on behalf of the appellant Denzel Smith. This case comes to the appellate court from appeal of the defendant's sentence. Counsel, I meant to say before you started that I wanted to thank you and Miss Brooks for appearing over here at UIS today for oral arguments. It's a little out of the ordinary but we really appreciate your taking the time to come to the University and do your argument here so the students can observe. Well thank you for inviting me and thank you Miss Bender. This is a good opportunity and I think it's very good for the students. I apologize for So basically what this case comes to the court, the defendant was charged initially with a class X felony and that was aggravated arson based on some facts I'll go into in a little bit. I think that the facts do bear some discussion because the trial court relied heavily on them at sentencing. He was initially charged the class X felony 6 to 30. About a little less than a year later he pled to a lesser included attempt class 1 attempt ag arson. So that had a sentencing range of 4 to 15 years in the Illinois Department of Corrections. It was however probationable. He pled open to that charge and he received 13 years in the Illinois Department of Corrections. So basically the facts of this case is essentially that the defendant came home one day to discover that his laptop was missing. He shared the apartment, his apartment, with a roommate. He asked the roommate about the laptop being missing. He said it you know might be Larry Green. So the two of them went to look for Mr. Green. They found Mr. Green's brother standing in front of a house in Urbana I believe it about the missing laptop saying you know I think that your brother stole my laptop. The interchange basically ended there. My client went back to his apartment. He later came back to the house in front of where Larry Green's brother was standing and they had that conversation and he attempted to ignite the house. He was unsuccessful. He actually came back later and attempted to ignite it again. The house sort of partially ignited. There's photographs that are in the exhibits. Basically the the siding kind of got burned and the sort of hook in this case is that it was actually not Larry Green's house or his brother's house. It was just the house that his brother was standing in front of. So it was actually an elderly woman's house and I believe that she had a disabled adult that was living in the house too. So they later arrested him. They pulled him over and the smell of gasoline was emitting from the vehicle and they put two and two together and they eventually arrested him and charged him with this crime. So that was the more or less the agreed upon factual basis of the parties here. Our request for relief is basically for Mr. Smith's sentence to be reduced in light of the court more or less failing to ignore statutory and other factors and mitigation pretty much to the seriousness of the offense. And this is one of those cases where the facts of the case, and this is why I brought him up, are sort of inescapably bad. They're the sort of facts that a judge, when he's imposing sentence, just can't get passed. But fortunately for defendants the law requires the trial court to go past the maintaining here that the 13-year sentence, which is near the upper end of the 4-15 range, was excessive in light of... What should have been? Well, your honor, we didn't request a specific sentence in our prayer for relief. It could be probationable. It's the presumptive sentence in Illinois. We would ask it to be anything lower than 13 down to probation. Now, if the court didn't think that this was a type of probational offense, then... Well, counsel, here's where I see the problem. Your problem with this argument is, as you just suggested, anything less than 13 all the way down to probation, there's a great deal of discretion that the trial judge has in picking a number. And you have to show that that trial court abused her discretion, meaning that no reasonable person could have taken the view adopted. And when you say that it goes all the way from probation up to 13 years, to me, that brings forth the argument that what we have here is a trial court looking at everything and using her best discretion in handing out the sentence that she did. Well, your honor, I think it should be clarified that the sentencing range isn't... I mean, it is probation to 15 years. In a way, it's not, though, because if the court imposes a term of imprisonment, if the court determines that a term of imprisonment, in contrast to probation, is appropriate for whatever reason they need to remove him from the community. Then the minimum is four years. So the court can't do one, two, or three. It has to be four and up. So really, there's two sort of choices, either four to 15 or probation. And so if the trial court's reasoning was basically, and I think that the trial court, to some extent, did say, you know, this is the kind of person that shouldn't be in society or whatever, then I think that imposing a sentence of four years on the lower end of the spectrum would serve that same goal. And it would be reflective of the factors of mitigation that the defendant presented that the court basically ignored. And on that point, the court goes through, it begins its opinion, its sentencing opinion, saying, you know, I've looked at the pre-sentence report, the documents and evidence submitted at the sentencing hearing, the factors and aggravation and mitigation, the character, history, and rehabilitative potential of Mr. Smith, his statement and allocution, and the arguments and recommendations of counsel. So the court, at the onset of his opinion, is saying that he has acknowledged basically all the full range of information that he's allowed to acknowledge. But it would be the defendant's position that that was more or less sort of covering his base as sort of lip service. Because the court does mention these things during its opinion, but it basically gives no weight to any of the mitigating factors. In fact, the thing that sticks out to me about this particular sentencing hearing is the court will say, okay, yeah, there was this mitigating factor, but look at the seriousness of the crime. There was this mitigating factor, but look at the seriousness of the crime. Now, the trial court's allowed to look at the seriousness of the offense. And as we have conceded in our brief, it was unquestionably serious. I think that that was the specific language that I used. There's no doubt that there was a possibility for a true tragedy to happen here. But I think that the facts, while they tend to sort of tip towards aggravation, I think that they offer some mitigation as well. Specifically, the fact that it's a legal factor that the court has to consider is the defendant's young age. I was thinking about the actual facts of this case. And this young man tried to set a house on fire because he thought that somebody stole his laptop. Now, those two acts are so out of proportion to one another that it makes you think, geez, there's something not right here. And if you look at the report from the psychologist that was submitted at the sentencing hearing, that the court indicated that it considered, it talks about a number of different cognitive functioning issues that the defendant had that could very well explain this, in addition to the defendant's young age. This is not something that a full-grown adult with a fully developed brain is going to do when somebody steals his laptop. Most of us are going to call the police. But when you have the cognitive functioning problems that are documented in the report, then that goes a long way in explaining a lot of this. I think that this is one of the most unfair parts of the sentencing hearing, is that the judge basically dismisses the psychologist's report out of hand. He's basically saying, well, the onset of the report is the defendant giving his version of the facts to the psychologist, and that doesn't match up with a statement of facts that was agreed upon by the parties. Well, I think that this court is very experienced. They know that, number one, defendants typically do not accurately report the factual basis of their crimes, either before they're convicted or afterwards. In fact, there's always sort of a tendency to minimize their role, and that's exactly what he was doing. But what the court did was basically throw out the baby with the bathwater and said, well, this report contains a number of inaccuracies, chief of which is the defendant's version of the facts that was given to the psychologist. So therefore, I'm not going to rely on his findings, because basically I don't know how much credence to give them. Was the psychologist aware of his juvenile record consisting of residential burglary and unlawful use of weapons? I can't speak to the psychologist's awareness. There is a section in the report, it's appendix number 11, that talks about basically the methodology that's used in how the psychologist arrived at the conclusions that he did. So it says that the exam is structured to interview that addresses psychological history, treatment, medication, drug and alcohol usage, work history, orientation, memory, learning ability, concentration, abstract thinking, judgment, lifestyle, and clinical observations. Then it goes through a number of these sort of standardized tests that were implemented, the Minnesota Multiphasic Personality Inventory, the Million Clinical Multiaxial Inventory, et cetera. It doesn't necessarily reference in the report whether he was aware of the extent of his juvenile history. There is in the evaluation summary and recommendations, I'm specifically referring to page 812, where he talks about the defendant being placed on probation due to fighting. He also spent two one-week stays in the Champaign County Juvenile Detention Center. He completed probation when he was 18 years old. So the report does reference his juvenile history to the extent that he was aware of every conviction or disposition, I guess. I don't know. So I think that the trial court basically dismisses the report of the psychologist out of hand because the report is based on self-reported information. And as we all know, self-reported information isn't the most reliable information. But I would submit that with a psychological evaluation, there's very little way of gathering that information other than self-reporting. And what's important here is not necessarily what was and wasn't reported, but also take into consideration the psychologist's own, his own tools that he uses, the objective test that he uses, his observations. The conclusions that he comes to are not, they're not over-the-top mitigation type conclusions where, you know, these are not the conclusions that would clearly come from somebody that is tipped off as to what they should write or what kind of things would be helpful. He's saying things that are not particularly flattering about this defendant. And this is a report that's supposed to help him. So I really think that the trial court dismissed the report entirely, and it did that in error because I think that there was a lot of very useful information. And Justice Turner, as long as you bring up his juvenile history, he did have a juvenile history. I believe that he had possession, it looked like a tear gas gun was the first charge, then a residential burglary, and then a criminal trespass. So I guess you might be able to argue that the possession of the tear gas gun was sort of quasi-violent in that it could have been. But other than that, you know, he doesn't have a history of violent offenses. And even though this particular offense could have turned out tragically, there's something that is just not well thought out that somebody that had particularly violent intentions would do. So I think that the state could argue that the trial court correctly interpreted the defendant's criminal history in that he was only 20 years old when he committed this offense. And for the last few years prior to this, at least before he was 18, he had, you know, had these delinquency charges. So this is sort of the criminal history that the court has to go on. And I think that the counterargument to that, or what's notable, is that after he turned 18, all he had was a speeding ticket. So after he turned 18, you know, his brain, his maturity is getting more developed. And this incident has showed that he wasn't quite there yet. The last two factors that I brought up in my brief that the court didn't consider, or at least didn't take seriously, were the fact that he does have family support. He was employed at the time. There was a little bit of questioning about what his status was as a student, I believe at Parkland College, which I think is a community college in that area, the Champaign-Urbana area. But this wasn't a guy that was sitting around and plotting this type of crime. I have no idea, and I can only speculate as to how he came up with this plan, but clearly it wasn't very well thought out. And that's evidenced by the fact that he had to go back twice that he's pulled over reeking of alcohol, or not alcohol, gasoline. And the fact that this offense that was committed is totally out of proportion to the initial crime that he was sort of trying to take into his own hands. But did he even know that Green was the person who took it? Was there any proof? There wasn't. No. Is that what you said, there wasn't? No, I think that how it happened, Your Honor, was that he comes home, he asks his roommate, you know, my laptop's missing. And his roommate goes, well, you know, these three guys were over earlier, and maybe one of them took it. So they go searching for him. The roommate never indicated that it was Larry Green that took the laptop. So he didn't even know for sure that this individual was the one who took his laptop. And obviously he didn't know whose house that was that he set on fire. This is not somebody that is coolly and calculatedly doing things. This is somebody who basically completely lacks judgment. And that's exactly what the report says. And the trial court makes no reference to that. And I think that it would be a fair statement to say that judgment improves with time and experience and life lessons. And this is the defendant's first of what will probably be a series of life lessons now. And the trial court didn't give him any credit for his relative inexperience with those types of things. Does the court have any other questions before I sit down? No, I don't see any. Thank you, Your Honor. Thank you, Counsel. You'll have a chance on rebuttal. Thank you. Ms. Brooks. Good morning, Your Honors. I'm Allison Paige Brooks, appearing on behalf of the people. May it please the court and counsel. First of all, this court has to keep in mind the extent of the sentencing court's discretion and the requirement that this court defer to that sentencing court's discretion. And the abuse of discretion is one of, if not the highest level of most stringent standard review that this type of case has to be subjected to. So the defendant has a very, very high burden to meet in order to obtain a reversal or reduction of sentence. The standards here for excessive sentence claims are whether the sentence is greatly at variance with the spirit and purpose of the law or either manifestly disproportionate to the nature of the offense. And starting here with the nature of the offense, this is one of the most serious offenses. It's originally charged was a Class X felony, the highest class, short of murder. And the statute of aggravated arson requires damage to the property, and here there was damage to the property. So the defendant, by obtaining, essentially was a somewhat negotiated plea on charge only, not as to sentencing. But the reduction in the offense, the class of the offense of the charge, to reduce it to an attempt offense rather than a completed offense, becomes only a Class I felony subject to 4 to 15 rather than a Class X range of 6 to 30. So the defendant already has a great measure of leniency built in by nature of the fact that he pleaded guilty and the sentencing range was reduced by virtue of that guilty plea. So keeping that in mind, the 13-year sentence does not seem to be as substantial if it were imposed as part of a 6 to 30 range, where here it was imposed as part of a 4 to 15 range on an attempt charge. Of course, using gasoline accelerant to try to burn down an occupied home is a very, very serious crime, and the only reason why it's not any more serious is because he was not successful in igniting the home in a way that could have posed an even greater risk of fatalities to the occupants. Here the trial court was justified in viewing the defendant as presenting an unacceptable danger, a risk of danger to the public. Of course, the defendant tried to mitigate that risk by presenting Dr. Campion's psychological testing, but in doing so, minimized and understated both the extent of his prior juvenile delinquency and the nature of his crime in trying to get... And eventually Dr. Campion did say that he was, with potential counseling and stuff, that he would be less of a risk to the public. However, the trial court correctly discounted that evaluation because of the sanitized version of the offense that the defendant gave. The defendant, I think, told Dr. Campion that he tried to start the fire, wasn't successful, and then went home when actually, in fact, he tried to start it on three different locations of the house, even went home to get help from his roommate to research on the Internet ways to burn down a house and do it successfully. So this is why there is what the trial court viewed as very frightening and disturbing elements of persistence. And the dangerousness this defendant presented was not only was he premeditating and planning this crime, but he did not even plan it well enough to target the home of the person that he suspected was responsible for the theft of his laptop, someone who he didn't even know to have taken it, but just simply suspected to have taken it, and did so something that was so shockingly out of proportion to that provocation, is just such an unacceptable risk to the community that this sort of crime is necessary, this sort of sentence is necessary to deter other potential people in the community from thinking that they can get away with acts of vigilantism, similar acts. Even if there were greater provocation, for example, this sort of response is not to be tolerated in the community. And the fact that there were innocent people that the defendant did not take heed of, he's trying to target Larry Green, admittedly, but yet by trying to burn down a house, he doesn't take into account the potential innocent's lives that could be at risk from an act of burning down a house. So that is why the trial court was so concerned about this case and requiring a substantial sentence to not only punish the defendant for his very serious crime, but also deter others who might think about engaging in similar crimes. And also, I think, Dr. Campion's evaluation report makes reference to prior incidents of fighting that the defendant had when he was a lot younger. Those were triggered by similar acts where... similar incidents where the defendant felt that he was wronged somehow or disrespected by others, and he retaliated by fighting. And so now as an adult, he's escalated that level of retaliation into an aggravated arson, an attempted aggravated arson. So though the defendant is relatively young, it's...even though it's 20 years old, this is not typical behavior for a person who is 20 years old. And although he did lack judgment, this is such a shocking and gross lack of judgment that it just simply cannot be explained away by a 12-percentile result on a cognitive assessment test from the Wunderlich personnel test that he took. That doesn't explain why someone with a 12-percentile cognitive assessment is going to do something like this. So the defendant admitted to the psychologist his emotions got the best of him. So this is not really as much of a cognitive issue as somebody who's let his emotions get out of hand. Although I think the trial court also emphasized that there was not any... the psychological report did not conclude that the defendant had any mental illnesses or psychological conditions, diagnosed psychological conditions that would explain his behavior. So for those reasons, the trial court viewed this as simply a crime that cannot be tolerated in the community and doesn't really have sort of explanation or justification that the defendant wants to try to color this with to say that he was young and had some mental issues, and that explains why he would do something so out of proportion to the provocation. There is some mitigation in the record. As the defendant points out, this family support, he does have some employment history and he was pursuing education at the time before he committed the crime. And although the trial court does not have to give as much weight to the mitigating elements versus the seriousness of the offense, and I think what the defendant's argument was here is that there was... the trial court gave no weight or maybe the other argument could be insufficient weight to the mitigating factors, but in the Alexander case, it emphasizes that the reviewing court cannot reweigh the factors just simply because the reviewing court would have done so differently than the sentencing court. So because of that required deference, and the fact that this court cannot reweigh the factors, that's one reason to reject the defendant's argument. Also, this court has to presume that the trial court did what it said when the trial court said that it was considering the factors in mitigation, and other than the sentence imposed, the defendant has to show that there is some basis in the record to claim that the trial court failed to consider mitigating factors. So that's the extent of the state's prepared argument. I'm willing to entertain questions from the panel. Is a defendant eligible for day-to-day good time, day-for-day good time? Yes, and I believe when I checked the Department of Corrections website this morning, he was receiving it. So I don't know that this is a truth in sentencing offense, and as far as it being probationable, this is not the type of crime for which probation would be appropriate, even if it is, in fact, a statutory eligible type of thing. The trial court did not abuse its discretion in denying any request for probation. I'm not sure if one was made. Any other questions, Your Honors? Thank you, counsel. I'd like to thank you and request to affirm. Okay, thank you, counsel. Mr. Neiman, rebuttal. Thank you, Your Honor. To answer the court's question, first of all, he is receiving day-for-day good time credit. The offense, because it's an attempt offense, isn't subject to truth in sentencing. It's not one of the enumerated offenses, so he is receiving that. I acknowledge the state's argument that legally the abuse of discretion, standard of abuse, is difficult to overcome as a defendant. However, I'd submit that the appellate court, at least statewide, routinely finds that courts abuse their discretion in one way or another, and the cases year after year are reversed, and that's what they're here for, the appellate court. So it does happen, and the court does have power under Supreme Court Rule 615b-4 to reduce a sentence on appeal. Not just remand it, but to actually reduce it, and the court's done so before. I realize that that's a high burden, but the appellate court has ruled before that the court may not simply focus upon one factor alone, such as the seriousness or circumstances of the offense. That's the Donald case out of the 1st District that I cited in my brief. And while a court may take the seriousness of the offense into consideration at sentencing, it must also carefully consider all the aggravating and mitigating factors in the case. And that's the Maldonado case, the Donald case, and the Merritt case that I cited in my brief. So the thrust of our argument here is that the court abused its discretion by not carefully considering all the mitigating factors. In fact, it didn't really consider any of them at all. It simply acknowledged them, but it didn't provide any analysis as to how those may or may not have been mitigating. The defendant put forth quite a bit of mitigation evidence in this case. That's probably why counsel, when he was advising him to plead guilty, thought that this might be a good gamble, because he's got a lot of things going for him. But if that amount of mitigation is only enough to knock off two years off of a 15-year sentence on a probationable charge, then the court's clearly not taking something into consideration. This is the guy's first felony, and he's going to prison for 13 years. And yes, he does not have a perfect juvenile history. Yes, this was a serious crime. But no, this is not worth 13 years in the Illinois Department of Corrections. And the appellate court is able to take that same stance, and we asked them to. The state's argument is really a lot of it we agree about. It's a serious offense. The court can consider that seriousness. But as the state has spent most of its time, even in argument here explaining, it comes back to the offense over and over and over again. The facts of the offense, the fact that he placed these people in harm, the fact that he could have done these number of things. We don't dispute that. The trial court's job is to get past that, and they didn't here. And that's an abuse of discretion. The facts of this case completely blinded the trial court from exercising its duty to consider both the good and the bad about the defendant himself. The crime has already been committed. The defendant has pled guilty to it. A factual basis has been agreed to. In many ways, it's time for both the victims and the defendant to move on. And the only way that the court is going to be able to do that is to evaluate the defendant himself as a whole to determine what's the next step. Because this is somebody that, regardless of the trial court's ruling, is going to be released into society at some point. And the offense, with its Class I sentencing range of 4 to 15 years, contemplates the possibility of a defendant being incarcerated for a while. In fact, for a long time. So that, to use the words of the state, is already built in to the offense. I didn't argue that the court, you know, used double enhancements or considered factors inherent in the offense in making its decision, but it got pretty close to it. And so, for those reasons and the reasons I've provided before, I asked this court to find that the court abused its discretion in sentencing the defendant to 13 years in the Illinois Department of Corrections and to reduce his sentence to probation if the court feels that probation is appropriate or, in the alternative, if the court feels that a Department of Corrections sentence is absolutely necessary to impose a sentence near or at the minimum. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess. Thank you.